IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIA L. DIFRANCESCO<br>*Plaintiff* | : | CIVIL ACTION |
| | : | |
| | : | NO. 13-4284 |
| | : | |
| v. | : | |
| | : | |
| A-G ADMINISTRATORS, INC.<br>*Defendant* | : | |
| | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                    SEPTEMBER 4, 2014

## MEMORANDUM OPINION

**INTRODUCTION**

Maria L. DiFrancesco ("Plaintiff" or "DiFrancesco") filed a two-count employment discrimination complaint against A-G Administrators, Inc., ("Defendant" or "A-G") claiming that Defendant discriminated against her by wrongfully terminating her employment based on age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§621-634, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §955 *et seq.* [ECF 1].

Following the completion of discovery, Defendant filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure (Rule) 56. [ECF 19]. Plaintiff filed a response in opposition, [ECF 21], and Defendant filed a reply. [ECF 22]. The motion for summary judgment is ripe for disposition.

For the reasons stated, the motion for summary judgment is granted and DiFrancesco's complaint is dismissed, with prejudice.

BACKGROUND

For purposes of this motion for summary judgment, the facts in this matter, presented in the light most favorable to DiFrancesco, the nonmoving party, are summarized as follows:[1]

>DiFrancesco was born in 1954. On December 7, 2009, at the age of 55, DiFrancesco was hired by Defendant as a senior staff accountant,[2] a position Defendant deemed was "very specialized so her accounting duties were [the company's] focus for her."[3] These duties included, *inter alia*, reconciling claim accounts and premium trust accounts; producing records using the standard Generally Accepted Accounting Principles ("GAAP") for external auditing; and preparing the "bordereau," a detailed statement used in the insurance industry to reflect the breakdown of premiums and commissions collected during a certain time period. DiFrancesco was also responsible for balancing the accounts and sending premiums statements to carriers.[4]
>
>Defendant is a third-party administrator of excess accident insurance for, *inter alia*, K-12 school districts, colleges, universities, participant accident organizations, and nonprofit organizations.[5] It has a workforce of 25 employees. In February 2009, Dixon and Jake Gillis, siblings, purchased the company from their father and became the owners, operators, and managers of A-G.[6]
>
>Prior to hiring DiFrancesco, Defendant did not have an in-house certified public accountant ("CPA"). For expanding business opportunities, Defendant sought to fill a senior accountant position with someone with expertise in bank reconciliation, licensing, and auditing financial statements.[7] DiFrancesco presented herself as qualified, with a CPA license, and experience auditing tax returns for local agencies.[8] Based on these representations, Defendant hired DiFrancesco.

---

[1] *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986); *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006) (in deciding a motion for summary judgment, the reviewing court should view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor).
[2] Compl. at ¶¶7, 8; DiFrancesco Dep., 32:13-14, 35:15-22, 37:16, Mar. 5, 2014 (Exh. B).
[3] D. Gillis Dep., 24:13-23, Mar. 6, 2014 (Exh. C).
[4] J. Gillis Dep., 14:16-15:7, Feb. 11, 2014 (Exh. A); D. Gillis Dep., 26:6-12, Mar. 6, 2014.
[5] J. Gillis Dep., 10:12-22, 11:25-12:2, Feb. 11, 2014.
[6] *Id.* at 11:15-12:4; Novak Aff. at ¶5, Mar. 16, 2014 (Exh. M).
[7] J. Gillis Dep., 13:11-25, 16:21-25, 65:7-9, Feb. 11, 2014; D. Gillis Dep., 20:15-18, 25:1-23, Mar. 6, 2014.
[8] Compl. at ¶9; DiFrancesco Dep., 8:19-9:1, 9:13-20, 9:23-10:6, Mar. 5, 2014; D. Gillis Dep., 20:25-21:6, Mar. 6, 2014.

*Age Discrimination Claim*

In her complaint, DiFrancesco avers that her employment was terminated because of her age. She does not recall being asked her age when she was interviewed or hired,[9] and Dixon Gillis does not recall knowing it.[10] DiFrancesco, however, contends that sometime in November 2010 and January 2011, Jake Gillis asked for her birthdate.[11] When he asked her again by email on April 8, 2011, DiFrancesco responded, "Why? And do I need to give you the year?" Jake Gillis replied that he needed the information for the company's 401(k) profit sharing plan.[12] It is not clear from the record whether DiFrancesco provided the information, however, she contends that in October 2011, Jake Gillis asked for her birthdate a fourth time "for no apparent reason" and from then on called her "grandma" or "grandmom," several times a week, usually when she brought paperwork to his office even though she is not a grandmother.[13] According to DiFrancesco, Dixon Gillis also called her "lunch bag" and "old hillbilly," and he expressed concern about her lifting heavy boxes, causing her to believe that his concern was an insinuation that she was too old to pick up the boxes.[14]

*Termination of Employment*

On November 17, 2011, DiFrancesco's employment with Defendant was terminated. She contends that the reason given to her was that the company was heading in a different direction and it no longer needed her services. She was then 56 years old.[15]

Thereafter, Bill Cole ("Cole"), then 39 years old,[16] was hired on December 1, 2011, as a full-time employee and took over DiFrancesco's responsibilities,[17] as confirmed by Daniel Beery ("Beery"), a co-worker, who testified that Cole's new responsibilities were identical to DiFrancesco's.[18] Cole had been A-G's outside CPA consultant for approximately 14 years.

When DiFrancesco applied for unemployment compensation benefits, citing "lack of work" as the reason for her unemployment,[19] Defendant opposed her application on the grounds that her employment had been terminated for performance-related reasons; *to wit*: (i) unreliability; (ii) perpetual lateness; (iii) marginal ability in accounting skills (which was her role at the company); (iv)

---

[9] DiFrancesco Dep., 38:13-21, Mar. 5, 2014.
[10] D. Gillis Dep., 23:16-18, Mar. 6, 2014.
[11] DiFrancesco Dep., 113:22-114:2, Mar. 5, 2014.
[12] *Id*. at 113:5-13, 118:6-8; *see also* Exh S.
[13] Compl. at ¶11(b); DiFrancesco Dep., 47:9-13, 121:10-24, Mar. 5, 2014.
[14] DiFrancesco Dep., 108:23-6, 111:5-24, Mar. 5, 2014.
[15] Compl. at ¶10; DiFrancesco Dep., 36:7-22, 38:5-6, Mar. 5, 2014.
[16] Cole Dep., 6:2-7, Mar. 6, 2014 (Exh. T).
[17] J. Gillis Dep., 32:18-33:2, 33:8, 34:17-22, Feb. 11, 2014; Cole Dep., 6:2-5, Mar. 6, 2014.
[18] Beery Dep., 10:12-23, Feb. 21, 2014 (Exh. K).
[19] *See* Dec. 9, 2011, letter from Jake Gillis to the Erie Unemployment Compensation Service Center (Exh. U).

3

constant distraction due to personal telephone calls (and distracted others in the office as a result of those calls); (v) communicating with co-workers with a total lack of respect; and (vi) being an overall strain on Human Resources.[20] DiFrancesco contends that these reasons came as a surprise to her because she was never told by anyone at A-G that there was a problem with her performance and, in fact, "they were always thrilled with [her] performance." DiFrancesco acknowledged that her attitude might have been an issue, but this issue was addressed only once.[21]

Procedurally:

On May 14, 2012, DiFrancesco filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC"). On July 24, 2013, she filed the present court action against A-G alleging unlawful discrimination because of her age. On September 27, 2013, A-G filed an answer, [ECF 4], and the parties proceeded to discovery. On May 27, 2014, A-G filed the instant motion for summary judgment. [ECF 19].

**LEGAL STANDARD OF REVIEW**

When reviewing a motion for summary judgment, the court must determine whether the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine dispute as to any material fact and whether the moving party is, therefore, entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 271 (3d Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A disputed issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the nonmoving party. *See Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is material only if it might affect the outcome of the suit under governing law. *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)); *Doe v. Luzerne County*, 660

---

[20] *See* Dec. 9, 2011, letter from A-G to Erie Unemployment Compensation Center (Exh. U).
[21] DiFrancesco Dep., 37:1-13, 41:4-5, 50:18-22, 63:8-16, 98:16-99:9, Mar. 5, 2014.

F.3d 169, 175 (3d Cir. 2011), *aff'd* __ F. App'x __, 2014 WL 2853937 (3d Cir. 2014) (citation omitted). A court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *See Anderson*, 477 U.S. at 248-49.

The moving party bears the initial burden of showing that there is no genuine issue of material fact and that it is entitled to relief. *See Celotex Corp.*, 477 U.S. at 323. Once the moving party has met its initial burden, the nonmoving party must present "specific facts showing that there is a genuine issue for trial," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)), by offering concrete evidence supporting each essential element of the claim. *See Celotex Corp.*, 477 U.S. at 322-23. The nonmoving party must show more than "[t]he mere existence of a scintilla of evidence" for elements on which said party bears the burden of production, *Anderson*, 477 U.S. at 252, and may not "rely merely upon bare assertions, conclusory allegations or suspicions." *Fireman's Ins. Co. of Newark, New Jersey v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982); Fed. R. Civ. P. 56(e). There must be evidence on which the jury could reasonably find for the nonmovant. *See Jakimas v. Hoffmann–La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007) (quoting *Anderson*, 477 U.S. at 252).

In deciding a motion for summary judgment, the reviewing court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Scheidemantle,* 470 F.3d at 538; *Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765, 770 (3d Cir. 2009). Whenever a factual issue arises which cannot be resolved without a credibility determination, the court must credit the nonmoving party's evidence over that presented by the moving party. *See Anderson*, 477 U.S. at 255. If there is no factual dispute or issue and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party. *Id.* at 250.

5

## DISCUSSION

The ADEA prohibits employers from discriminating against individuals in hiring, discharge, compensation, terms, conditions, or privileges of employment because of their age. *See* 29 U.S.C. § 623(a)(1);[22] *Burton*, 707 F.3d at 426. To prevail on an ADEA claim, "a plaintiff must show that his or her age 'actually motivated' and 'had a determinative influence on' the employer's decision to fire him or her." *Ptasznik v. Univ. of Pennsylvania*, 523 F. App'x 156, 159 (3d Cir. 2013) (quoting *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337 (3d Cir. 2002)). That is, a plaintiff bringing an age discrimination claim "must prove by a preponderance of the evidence that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 177-78 (2009). "Unlike Title VII [of the Civil Rights Act of 1964], the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor" in an employment action. *Id.* at 174. Rather, under the plain language of the ADEA, the complained-of action must have resulted "because of" the employee's age. *Id.* at 176 (quoting 29 U.S.C. §623(a)(1)). The plaintiff always retains the burden of persuasion in an age discrimination case, and must show that the adverse employment action would not have occurred *but for* the employer's consideration of age. *Id.* at 177. A plaintiff can meet this burden by presenting (1) direct evidence of discrimination or (2) indirect evidence of discrimination that satisfies the familiar three-step framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Fakete*, 308 F.3d at 337-38.

A direct evidence case of age discrimination is presented when "the evidence the plaintiff produces is so revealing of discriminatory animus that it is not necessary to rely on any

---

[22] "It shall be unlawful for an employer … to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age …." 29 U.S.C.A. §623(a)(1).

6

presumption from the [*prima facie*] case ... to shift the burden of production." *Gutknecht v. SmithKline Beecham Clinical Labs., Inc.*, 950 F. Supp. 667, 670 (E.D. Pa. 1996) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 778 (3d Cir. 1994)). What is required is "direct evidence that the decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision." *Id.*

*Direct Evidence Analysis*

In its motion for summary judgment, Defendant argues that DiFrancesco cannot meet the post-*Gross* direct evidence burden of proof because there is no causal relationship between her proffered direct evidence of age discrimination *and* A-G's decision to terminate her employment. Specifically, DiFrancesco relies on the following instances as proof of age-based animus on the part of Defendant to terminate her employment; *to wit*: (1) being asked her birthdate four times; (2) Dixon Gillis calling her "lunch bag"; and (3) Jake Gillis calling her "grandmom," "grandma," or "old hillbilly." Defendant further argues, and this Court agrees, that none of these instances, separately or jointly considered, support a finding that a causal relation exists between the decision to terminate DiFrancesco's employment and her age.

As to DiFrancesco's contention that her being asked on four separate occasions for her birthdate is evidence of age discrimination, she contradicts this assertion when she testified that she did not think Jake Gillis paid attention the first three times she told him, which would, therefore, have legitimized the fourth time he asked her. At her deposition, the following exchange occurred:

> Q. Well, you were hired when you were 55, why would you think that he cared when your birthday was other than reasons associated with employment?
>
> A. I don't think he knew how old I was when I was hired.
> Q. Did you lie to him the first three times you told him your birth date?

7

A. I don't think he paid attention the first three times of my birth date which is why he asked the fourth time.

Q. Well, thank you because that makes sense. So if he didn't pay attention the first three times of your birthday, why is asking the fourth time because he didn't pay attention problematic?

A. Because he wanted to know how old I was because –

Q. No, he wanted to know your birthday.

A. He wanted to know how old I was for his own – for whatever his reasons were, I don't know what he was thinking. I don't know why it would have been appropriate to ask me for my birthday for no reason.[23]

Jake Gillis offered a reasonable explanation for asking her birthdate; it was needed for the company's 401(k) plan.[24] DiFrancesco offers no evidence to rebut this reasonable explanation.

As to the assertion that Dixon Gillis called her "lunch bag," DiFrancesco admitted that she did not know how the term "lunch bag" referred to her age:

Q. And what does lunch bag mean to you?

A. I don't know. I used to carry this huge lunch bag coming into work every day for two years.

Q. So how does a lunch bag –

A. He thought it was cute, I guess, I don't know what his purpose of calling me lunch bag was.

Q. Well, how does lunch bag, if you don't know the purpose, refer to your age?

A. I don't recall him calling anyone else a name.

Q. So you were around every time he had private conversations with someone?

A. Never heard.

Q. You were never around during a conversation that Dixon had in his office, in the lunchroom, or otherwise when it was just Dixon and another worker; correct?

---

[23] DiFrancesco Dep., 120:2-121:1, Mar. 5, 2014.
[24] *See* April 8, 2011, email from Donald G. Motel to Jake Gillis, Subject: 401(k) Profit Sharing Plan (Exh. S); DiFrancesco Dep., 117:5-14, Mar. 5, 2014.

A. I don't recall.[25]

Besides calling her "MLD," Dixon Gillis did not have any nicknames for DiFrancesco.[26] In line with DiFrancesco's admission, this Court finds no age related animus to the term "lunch bag."

As to the "old hillbilly" comment, this Court notes that there is no averment in the complaint containing this phrase nor are there any witnesses to this comment being made.[27] As to DiFrancesco's contention that Dixon Gillis' comments regarding lifting heavy boxes was, to her, an insinuation that she was too old to pick them up and were not a concern regarding workers' compensation or A-G's liability as an employer, these personal inferences fail to show an age bias animus.

Finally, while DiFrancesco may insinuate that being a grandmother is a sign of age, aside from claiming that she was called "grandma" or "grandmom" a few weeks before her employment was terminated, DiFrancesco has not shown how these comments related to her discharge; *to wit*:

Q. Did any of your children have children?

A. I am not a grandmother, to answer your question.

Q. Okay. That's fine. If Mr. Gillis recalls giving you an example of explaining to you that he spoke with you about calling coworkers kids, kiddies, and that he illustrated that, you know, you took pride in being a motherly figure, and if he illustrated to you what's offensive, do you remember if that is the nature that he said that word, if at all?

A. No. I mean, I don't recall.[28]

---

[25] DiFrancesco Dep., 109:20-110:15, Mar. 5, 2014.
[26] D. Gillis Dep., 56:1-19, Mar. 6, 2014.
[27] DiFrancesco Dep., 109:7-15, 109:16-19, Mar. 5, 2014.
[28] DiFrancesco Dep., 127:3-14, Mar. 5, 2014.

Furthermore, stray remarks, such as "old hillbilly," "grandma," or "grandmom" by a decision-maker unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision. *Cellucci v. RBS Citizens, N.A.*, 987 F. Supp. 2d 578, 588 (E.D. Pa. Dec. 18, 2013) (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992)). Although DiFrancesco claims that she was called "grandma" or "grandmom" a few weeks before her employment was terminated, it is unrefuted that these comments were made during a counseling session as an attempt to illustrate her inappropriate office behavior and/or interaction with co-workers she called "kids" or "kiddies."

Thus, when considering the totality of DiFrancesco's proffered "direct" evidence of age discrimination, including the parties' depositions, based on the above-cited case law, this Court finds that the direct evidence offered by Plaintiff is insufficient to establish a causal relationship between the alleged "age-related" remarks *and* A-G's decision to terminate her employment.

*Indirect or Circumstantial Evidence Analysis*

Where there is no direct evidence of age discrimination, a plaintiff may still prevail in an age discrimination action by presenting indirect or circumstantial evidence of the discrimination within the burden-shifting analysis of *McDonnell Douglas*. *Gutknecht*, 950 F. Supp. at 671; *see also Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009) (reaffirming the use of the *McDonnell Douglas* standard in ADEA cases involving indirect evidence). The *but for* causation standard in age discrimination cases required by *Gross* does not conflict with the application of the *McDonnell Douglas* paradigm. *Smith*, 589 F.3d at 691. Therefore, once the employee establishes a *prima facie* case of age discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employer's adverse employment decision. *McDonnell Douglas,* 411 U.S. at 802; *Burton,* 707 F.3d at 426;

*Scheidemantle,* 470 F.3d at 539. Once the employer articulates a legitimate, nondiscriminatory reason, the burden of production shifts to the employee to establish that the employer's proffered justification for the adverse action is pretextual. *Fuentes,* 32 F.3d at 764-65. Throughout this burden-shifting exercise, however, the burden of persuasion, "including the burden of proving the 'but for' causation or causation in fact, remains on the employee." *Smith,* 589 F.3d at 691 (citations omitted).

Thus, for DiFrancesco to establish a *prima facie* case of age discrimination under the ADEA and support an inference of discriminatory animus, she must show that: (1) she is 40 years of age or older; (2) A-G took an adverse employment action against her; (3) she was qualified for the position in question; and (4) she was ultimately replaced by another employee who was sufficiently younger. *Smith,* 589 F.3d at 689. At the summary judgment stage, "the evidence must be sufficient to convince a reasonable factfinder to find all of the elements of [the] *prima facie* case." *Burton,* 707 F.3d at 426 (quoting *Duffy v. Paper Magic Grp.,* 265 F.3d 163, 167 (3d Cir. 2001)) (alteration in original) (internal quotation marks omitted). "If a plaintiff fails to raise a genuine dispute of material fact as to any of the elements of the [*prima facie*] case, the plaintiff has not met his/her initial burden, and summary judgment is properly granted for the defendant." *Id.*; *see also Geraci v. Moody-Tottrup, Int'l, Inc.,* 82 F.3d 578, 580 (3d Cir. 1996). The burden of establishing a *prima facie* case is not meant to be onerous; the *McDonnell Douglas* framework merely provides "a sensible, orderly way to evaluate the evidence" to determine whether it is adequate to create an inference of discrimination. *Cellucci,* 987 F. Supp. 2d at 589 (citing *Furnco Const. Corp. v. Waters,* 438 U.S. 567, 577 (1978)); *Jakimas,* 485 F.3d at 787 (citation omitted).